Davis, J.,
dissenting :
As tbe defendants manufactured and used tbe claimant’s improvement with bis consent, their acts were not tortious, but permissory; and unless tbe permission was intended and understood to be gratuitous, tbe claimant is entitled to recover tbe value of tbe invention to tbe extent of tbe defendants’ use of it, so far as be establishes that value by competent proof. In ascertaining it, tbe rules of law and tbe modes of applying them to tbe evidence are intermingled to such an extent, that it appears to me to be tbe duty of an inferior court to present tbe evidence on tbe point of value as facts, and tbe fact resulting from it as a mixed question of fact and law, in order that either *432 party feeling aggrieved may have the action of the court reviewed.
In practice, courts ordinarily resort to one of two standards in order to ascertain the value of an invention; 1st, the profits to be derived from the manufacture and sale of the patented article; or, 2d, the royalty fixed by the patentee and voluntarily paid by licensees. In the present case it is impossible to apply the first measure, because no sales of the manufactured article have taken place; and I think it is equally impossible to apply the second, because no voluntary purchase, of licenses have been made.
The claimant has granted but two licenses. The circumstances under which those were made preclude the idea of free action on the part of the licensee. If this were a jury case it Avould be the duty of the court to instruct the jury that, as the sales were made under duress, they are no evidence of the value which the purchaser attached to the royalty. Even if they had been voluntarily made by the purchasers, without the duress caused by the necessity of fulfilling their contracts, they are not sufficiently numerous to warrant us in accepting them as the measure of the damages to be imposed upon the defendants for their use of the claimant’s invention prior to the alleged sales. The character and standing of the parties to this transaction preclude the possibility of collusion; but it is plain that if such sales can be received as evidence of the just value of a license, so far as the opinion of this court can do it, the door is thrown open for fraud in futrue transactions between less reputable parties.
The claimant further oilers in proof the opinion of witnesses as to the probable value of the royalty on the claimant’s invention, derived from a knowledge of royalties on similar improvements fixed by inventors and paid by the public. This evidence is inadmissible, and in' my opinion, we are not warranted in forming any conclusion from it. The market value of a license is a fact, not an opinion. It is the price which the public is willing to pay and does .pay for the privilege of manufacturing and selling the patented article. To substitute for this ascertained or ascertainable fact the opinion of any one, no matter how learned in patents, as to what the public may at some future time be willing to pay for it when it shall be offered for sale, is wandering too far into the region of guesses.
*433 Tbe proof which the claimant offers on this point is also uncertain and inconclusive. It is, in effect, that the combined improvements which go to mate up the McKeever box, as compared with the old cartridge-box, are worth as an entirety 25 cents a box. It appears that other patented inventions, prior to McKeever’s, enter into his combination. Among the features claimed by him are a box in two separate parts hinged together, and cartridge-pockets attached by a pliable fabric to the body of the box in a manner to allow the cartridges to' fall into an oblique position. A cartridge-box in two parts hinged together was patented to Felix Ohillingworth on the 15th June, 1869. The cartridge-box of Josias E. King, patented on the loth November, 1870, is also in two piarts. The carriage of the cartridge in pockets of a flexible material is set forth in the specification of William Freeborn, dated December 10, 1867, and in the patent of Josias E. King, already referred to. The presentation of the cartridge in an oblique position for the benefit of the soldier is set forth in Chillingworth’s claim as one of the advantages obtained by his invention. We have no means of determining whether these prior inventions, which are incorporated into the claimant’s manufactured article, have or have not a money value. It was for the claimant to furnish light on this point. This proof, even if admitted (and I have already said it is inadmissible), only shows that the value of the entire royalty on all patented improvements used in his cartridge-box is 25 cents. If he were permitted to go thus far, he would be bound, in a suit founded on contract, to go further, and show what part of the 25 cents is due to him. Any other rule can, at the best, be applicable only to cases of tortious infringement of his rights.
Both parties have further offered proof as to the amount of benefit which the defendants have derived from the claimant’s Invention. In the absence of an established patent or license fee, and of all proof as to profits derived or derivable from the use of the invention, evidence of this kind is the best that can be procured. In the language of the late Mr. Justice Nelson, “What evidence can be more appropriate and pertinent than that of the utility and advantage of the invention over the old modes or devices that had been used for working out similar results ? ” (Suffolk Company v. Hayden, 3 Wall., 320.)
The proof on this point shows, first, that on the recommenda *434 tion of tbe board ou infantry equipments the McKeever cartridge-box was adopted for infantry use ou the 30th December, 1874; second, that between that date and June 30,1877, 18,813 boxes were manufactured at different arsenals; and, third, that this box, being found to be unserviceable in the field, the hunter’s belt was substituted for all cartridge-boxes then, and the use of the claimant’s box is now confined to garrison service and dress duty. In other words, it proved to be valueless as a receptacle for cartridges for use on the field of battle, but ornamental as a neatly-shaped leathern box to be worn at dress parade.
The defendants, who had on hand 18,000 manufactured boxes of this kind, are now using them for the latter purpose. There are some facts found which would warrant a jury in finding that, when the defendants’ agents approved and manufactured the cartridge-boxes, they thought that they were to do it without the payment of a royalty, but there is nothing to show that the claimant authorized or contributed to this impression; and apart from his long silence while they are manufacturing, and his delay in fixing an amount for the royalty, there is nothing to indicate that he shared in the impression. On the case as it stands, the claimant would be entitled to recover the value of the benefit which the defendants derived from the use of his invention if he had proved it. But he furnishes no data by which this value may be measured. The case, therefore, comes within the principle of New York v. Ransom (23 How., 487), where it is said that “actual damages should be actually proved, and cannot be assumed as a legal inference from facts which /afford no data by which they can be calculated. If the plaintiff fails to furnish any evidence of the prope rdata for a calculation of his damage, he should not expect that a jury should work out a result for him by inferences or presumptions founded on subtile theories.”
In my opinion tbe claimant is entitled to recover only nominal damages.
Drake, Oh. J., concurred in the dissenting opinion read by Davis, J.